

MC Cause number _49G01504 MC 014875
To be supplied by Clerk or Court staff

□ Grand Jury

☒ Search Warrant

□ Other _____
Indicate Type i.e., Trash Pull; GPS Petition, etc.

**FILED**
(110)  APR 2 9 2015

*Myla A. Eldridge*
CLERK OF THE MARION CIRCUIT COURT

Has the information in this search warrant been presented to another Judicial Officer?
Yes (No) (circle one)

**OFFICER INFORMATION (Required)**

Name GETZ, KEVIN L.
Last, First, Middle initial

ID 5762

DEPARTMENT Indiana State Police

**JUDGE'S DECISION**

☒ GRANTED      □ DENIED      DATE: 4/29/15

*Amy Martens - pro tem*

Office of the Court Administrator
Copies: Judge; Court File; 2 to Law Enforcement          Court Form 10-001 3/1/10 v 5
(Officer to attach 1 copy of cover sheet to the return of service when filed; retain 1 for their records.)

# SEARCH WARRANT

STATE OF INDIANA            )
                           ) SS:     IN THE MARION SUPERIOR COURT
                                     CRIMINAL DIVISION _____
COUNTY OF MARION           )
                                     CAUSE NO.:

IN THE MATTER OF          )
A REQUEST FOR THE         )
ISSUANCE OF A             )
SEARCH WARRANT            )

FILED
(110)    APR 2 9 2015
Myla A. Eldridge
CLERK OF THE MARION CIRCUIT COURT

WHEREAS, an affidavit has been filed with me, a copy of which is attached hereto and incorporated herein in all respects.   And the court having examined said affidavit and being duly advised in the property, now finds that there is Probable Cause for issuance of this warrant.

You are therefore **AUTHORIZED** and **ORDERED**, in the name of the State of Indiana, with the necessary and proper assistance, to enter into (upon) the following described property (premises), to wit:
And to search for and seize the following:

Items seized from 1304 Salem Creek Boulevard. Indianapolis Indiana 46231on April 29th, 2015 pursuant to a search warrant and
that are further described in attachment B. And to forensically search those items for evidence of child exploitation/child pornography.

You are further **ORDERED** to seize such property, or any part thereof, found on such search.

Dated this 29 day of April, 2015 at 2:28 O'clock P .M.

Amie Martens -pro tem
Judge of Marion County

COURT NO. 11

The above warrant was served on _____ at _____ . The following items were seized:



FILED

(110)    APR 2 9 2015

*Myla A. Eldridge*
CLERK OF THE MARION CIRCUIT COURT

STATE OF INDIANA

COUNTY OF MARION

IN THE MARION _____ COURT

2015 TERM

CAUSE NO. _____

FILED

(110)   APR 2 9 2015

SEARCH WARRANT AFFIDAVIT

Myla A. Eldridge
CLERK OF THE MARION CIRCUIT COURT

Detective Kevin Getz of the Indiana State Police Department swears he believes and has probable cause to believe that certain evidence hereinafter described, is contained in the following described real estate, to-wit: **a two-story ranch style home with a brown roof, tan siding and red brick, green shutters and a 3 car garage (two garages).** The home is located at the intersection of Salem Creek Boulevard and Baritone Court. The residence faces east and has a physical address of 1304 Salem Creek Boulevard, Indianapolis, Marion County, Indiana 46231. Affixed to the brick exterior of the front porch and to the left of the front door were the numbers *1304*.

I, Kevin Getz, Your Affiant, being duly sworn, depose and say that:

1.      I am a detective for the Indiana State Police (ISP), assigned to the Internet Crimes Against Children Unit and authorized to conduct investigations. I am a 1990 graduate of Ohio University and have been employed with the ISP since December 1993. I have worked as a uniformed trooper and general investigations detective. I am also a task force officer assigned to the Internet Crimes Against Children Task Force (ICACTF). This task force is comprised of Federal, State, and Local Law Enforcement agencies whose responsibilities include conducting undercover online investigations, responding to complaints regarding children sexually exploited via the Internet, conducting community education programs, and monitoring the Internet for the bartering in child pornography. As part of my duties, I investigate violations of Indiana law, including the online exploitation of children, particularly in relation to violations Indiana Code 35-42-4-4, which criminalizes, among other things,

the possession and dissemination of child pornography. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have received training in the investigation of persons using instant messaging clients to receive and disseminate child pornography. I have been involved in numerous Child Exploitation Investigations, including investigations with the Federal Bureau of Investigation, and local law enforcement agencies in Indiana. In the course of those investigations, I have learned that subjects engaged in possession, production and dissemination of child pornography had included a wide range of child pornography subject matter that was not limited to: infant victims, bondage, captured sexual activity between adults and children, and bestiality.

2. This Affidavit is made in support of an application for a warrant to search the premises located at 1304 Salem Creek Boulevard, Salem Creek Estates, Indianapolis, Marion County, Indiana, 46231 (hereafter known as the "SUBJECT PREMISES"), more particularly described in **Attachment A** incorporated herein by reference, for evidence of violations of Indiana Code 35-46-3-14.

3. As set forth below, there is probable cause to believe that an individual or individuals located at the SUBJECT PREMISES, engaged in bestiality, in violation of Indiana Code 35-46-3-14, a Level 6 Felony. It is also believed an image of the bestiality was distributed to a Jane Doe from the SUBJECT PREMISES using a form of digital media including either a cellular telephone or computer. I am requesting authority to search the entire SUBJECT PREMISES, including the residential dwelling, garage and any other detached buildings on the premises, and any computer and computer media located therein, where items specified in **Attachment B** may be found, and to seize all items listed in **Attachment B** as evidence of a crime; contraband, fruits of crimes, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime.

4. The factual information supplied in this affidavit is based on other law enforcement officers and my

investigation of this case, my experience and background, and my conversations with other law enforcement officers, who have engaged in numerous investigations involving child pornography and the sexual exploitation of children. One particular investigator I have spoken to concerning this investigation was Detective Sergeant Christopher Cecil. Sergeant Cecil is a detective/computer forensic examiner assigned the ISP Cyber Crime Unit in Indianapolis. He has been employed as a sworn law enforcement officer with ISP since October of 2004. He is also a task force officer assigned to the ICACTF. Sergeant Cecil has been involved in numerous child sex crime investigations including child molest, sexual misconduct with a minor, child seduction, child solicitation, and child exploitation. He has assisted in numerous child sex crime investigations with the US Department of Homeland Security Investigations, the US Postal Inspection Service, the FBI, and various other law enforcement agencies throughout the United States and Indiana. Sergeant Cecil has attended child exploitation/computer forensic training provided by Purdue University, the Indiana State Police, Office of Juvenile Justice Prevention, the National White Collar Crime Center (NWC3), Fox Valley Technical College ICAC Training & Technical Assistance Program, the United States Attorney's Office, National Center for Missing and Exploited Children (NCMEC), Guidance Software, the Berla Corporation, and BlackBag Technologies. In addition, Sergeant Cecil holds a Bachelors of Arts degree from the University of Evansville and a Graduate Certificate in Computer Forensics from the University of Central Florida.

He has had the opportunity to observe and review numerous examples of child pornography (as defined in Indiana Code 35-42-4-4) in all forms of media (including computer media) and has participated in the execution of numerous search warrants, many of which involved child exploitation and/or child pornography offenses. Because Your Affiant is submitting this affidavit for the limited purpose of securing a search warrant, I have not set forth every fact of this investigation.

5.     This investigation concerns alleged violations of Indiana Code 35-46-3-14 as related to bestiality and 35-42-4-4, relating to material involving the sexual exploitation of minors.

6.      Indiana Code 35-46-3-14 prohibits a person from knowingly or intentionally performing an act involving a sex organ of a person and the mouth or anus of an animal; a sex organ of animal and the mouth or anus of a person; any penetration of the human female sex organ by an animal's sex organ; or any penetration of an animal's sex organ by the human male sex organ.

7.      Indiana Code 35-42-4-4(b)(1)  prohibits a person from knowingly or intentionally manage, produce, sponsor, present, exhibit, photograph, film, videotape, or create a digitized image of any performance or incident that includes sexual conduct by a child under eighteen (18) years of age.  Indiana Code 35-42-4-4(b)(2) prohibits a person from knowingly or intentionally disseminate, exhibit to another person, offer to disseminate or exhibit to another person, or send or bring into Indiana for dissemination or exhibition matter that depicts or describes sexual conduct by a child under eighteen (18) years of age.  Indiana Code 35-42-4-4(b)(3) prohibits a person from knowingly or intentionally make available to another person a computer, knowing that the computer's fixed drive or peripheral device contains matter that depicts or describes sexual conduct by a child less than eighteen (18) years of age.

8.      Indiana Code 35-42-4-4(c) prohibits a person from knowingly or intentionally possessing a picture; a drawing; a photograph; a negative image; undeveloped film; a motion picture; a videotape; a digitized image; or any pictorial representation that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political, or scientific value.

### Background on Texting Messaging

9.      Your affiant knows from training and experience that text messaging or texting is the act of composing and sending brief, electronic messages between two or more mobile devices over a cellular network or via the Internet (usually via Wi-Fi).  Such communications are frequently used by persons with a sexual interest in children to trade and/or share child pornography.  Texting occurs in real-time.

10. Texting originated as a service offered by cellular providers in late 1995. Within the last ten years or so, texting has surpassed voice calls as a primary method of communication amongst mobile phone users. In 2010, the Pew Research Center found that 72% of US adult cell phone users send and receive text messages.

11. The term text message originally referred to messages sent using the Short Message Service (SMS). It has evolved to include messages containing images, video, and audio; these types of messages are referred to as Multimedia Message Service (MMS).

12. Text messaging allows for effective, efficient communication and immediate receipt of acknowledgment or reply. It is most often used between private mobile phone users as a substitute for voice calls in situations where voice communication is impossible or undesirable. Text message is typically an added service a user may have with their cellular plan.

12. In order to text a user initiates communication by opening the texting messaging application on their mobile device (cellular phone or tablet); selecting a person from the user's saved contacts that he or she wants to communicate with (or typing a person's mobile phone number): typing in the message; and, clicking the "send" button. If the other user is online and/or has a cellular connection, the text will appear, almost instantly, in a window on the recipient's mobile device. The complete text of the conversation will appear on both devices, but the windows may have to be scrolled in order to view the entire message. The communication appears to the users as being "point-to-point" (mobile to mobile) even though it may have multiple relay points during its travel.

12. If a user elects to send a multimedia file like an image, video, or audio files, he or she may have to browse to the location of such files on their mobile device and upload them into the texting client. The user has an option of inserting a text before sending the multimedia file.

13.    Sexting is the act of sending sexually explicit or suggestive content between mobile devices via SMS and/or MMS. Sexting may contain texts, images, or videos that were intended to be sexually arousing. Sexting is common amongst teens. While sexting may occur between two consenting persons, it is routinely from time to time done with less intimate intentions, such as to impress friends or to embarrass the person depicted.

## Computers and Child Pornography

14.    The information contained in this section is based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions.

15.    Computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based Web sites to conduct business, allowing them to remain relatively anonymous.

16.    The development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. The development of computers has

changed the methods used by child pornography collectors in the following ways:

a.    Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this

method of production does not leave as large a trail for law enforcement to follow.

b.    The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial ISPs, such as America Online ("AOL") and Microsoft, which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

c.    The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) Web sites that offer images of child

pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache1 to look for "footprints" of the Web sites and images accessed by the recipient.

d.  The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 40 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

### Characteristics of Individuals who Receive and Collect Images of Child Pornography

---

1 "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to and interaction with that web site.

17.    Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a.    Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.    Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.    Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica,2 and videotapes for many years.

d.    Likewise, collectors of child pornography often maintain their collections that are in a digital or

_____

2 "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individu but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positio Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department

electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e.  Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.  Collectors of child pornography prefer have continuous access to their collection of child pornography. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

18.  Based upon the conduct of individuals involved in the collection of child pornography set forth above, namely, that they tend to maintain their collections at a secure, private location for long periods of time, there is probable cause to believe that evidence of the offenses of receiving and possessing child pornography is currently located at the SUBJECT PREMISES.

## Specifics Regarding the Seizure and Searching of Computer Systems

19.  Based on consultations with other investigators who have been involved in the search of computers and retrieval of data from computer systems and related peripherals, and computer media, there are several reasons why a complete search and seizure of information from computers often requires seizure of all electronic storage devices, as well as all related peripherals, to permit a thorough search later by qualified computer experts in a laboratory or other controlled environment. Computer storage devices, such as hard disks, diskettes, tapes, laser disks, and DVDs, can store the equivalent of hundreds of thousands of pages of information. Additionally, when an individual seeks to conceal information that may constitute criminal

store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

evidence, that individual may store the information in random order with deceptive file names. As a result, it may be necessary for law enforcement authorities performing a search to examine all the stored data to determine which particular files is evidence or instrumentalities of criminal activity. This review and sorting process can take weeks or months, depending on the volume of data stored, and would be impossible to attempt during a search on site; and searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even those who are computer experts to specialize in some systems and applications. It is difficult to know before a search what type of hardware and software are present and therefore which experts will be required to analyze the subject system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (either from external sources or from destructive code imbedded in the system as a booby trap), a controlled environment is essential to its complete and accurate analysis.

20.    Based on consultations with other investigators who have been involved in computer searches, searching computerized information for evidence or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons that compel this conclusion:

1) The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in

order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

2) In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU). In cases like the instant one where the evidence consists partly of image files, the monitor and printer are also essential to show the nature and quality of the graphic images which the system could produce. Further, the analyst again needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

3) I am familiar with and understand the implications of the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, and the role of this statute in protecting First Amendment activities. I am not aware that any of the materials to be searched and seized from the SUBJECT PREMISES are protected materials pursuant to the PPA. If any such protected materials are inadvertently seized, all efforts will be made to return these materials to their authors as quickly as possible.

**Background of the Investigation**

21.    In September 2014, Master Trooper Patrick Etter (ISP) contacted me regarding a possible bestiality and child pornography investigation involving a person identified as Russell C. Taylor (Russell). Master Trooper Etter stated he had been approached by a female friend, Jane Doe, who indicated to him that

Russell had offered to send her images of young girls. This was in the context of a text message that included "her with dogs" and "s and m."

22.    On October 3, 2014, I briefly spoke with Jane Doe by telephone. She stated she had received several text messages from Russell which concerned her; she said she had not deleted these messages from her mobile phone. I requested an interview and consent to extract the text messages from her cell phone. Jane Doe consented to the interview and agreed to a search of her phone. Subsequently, I contacted Detective Sergeant Christopher Cecil (ISP Cyber Crimes Unit) and requested his assistance with the interview and the forensic examination of Jane Doe's phone.

23.    On October 3, 2014, approximately 1702 hours, Sergeant Cecil and I met with Jane Doe at her residence and discussed this matter. I read Jane Doe consent to search and she agreed to a search of her cell phone. During the interview, Sergeant Cecil performed a forensic extraction of data from her phone. Jane Doe said she had become friends with Russell and his wife, Angela M. Taylor (Angela), through her husband. The friendship continued even after her husband's death in 2013. This friendship included text messages between Jane Doe and Russell. During the course of the interview, Jane Doe stated Russell asked her if he and Angela could come to her (Jane Doe's) residence and engage in sexual activity with a horse. (Jane Doe boards four horses on her property.) Jane Doe said she dissuaded Russell from the activity. I asked Jane Doe if she thought the text messages were sent in a joking manner and she responded: "You could tell he was serious."

24.    Jane Doe told us that she received an image via text from Russell which depicted a dog licking the nude genitalia of a woman. Jane Doe believed Angela, Russell's wife, to be the woman depicted in the image. A text message was attached to the sent image that stated, "Here's Angie with her ex's dog." Jane Doe showed us the bestiality image and the corresponding text message. (She showed us this image prior to Sergeant Cecil beginning his examination.) Jane Doe advised she had previously observed Angela Russell's breasts and knew her to have large areolas. The woman depicted in the image sent to Jane Doe possessed large areolas.

25.    Jane Doe said she received a request from Russell asking if she wanted to see images of "young girls." Jane Doe also indicated a text message from Russell also mentioned traveling to Thailand in the past. (Based upon my training and investigation experience, I know persons who have a sexual interest in children have been known to travel to Thailand because it is a hotspot for child sex tourism.) Sergeant Cecil asked Jane Doe if Russell sent her images of young girls. Jane Doe stated no. When asked if Russell had ever expressed interest in engaging in sexual activity with children, she responded: "Not that I can remember, but he's the type of person that seems to be very sexually involved in whatever goes." I inquired if Russell sent her any other images of sexual activity with animals. Jane Doe said the dog image was the only image she received from him, but she knew "they liked to be sexually involved with other things" including bondage and "messing around" with horses. Jane Doe described the bondage acts to include "handcuffs, ropes and stuff."

26.    I asked Jane Doe if she had visited the Taylor residence and she answered yes. She told us there was a computer in the home and Russell had a "smart phone," but she was unsure of the phone type.

27.    Extraction of the data from Jane Doe's cell phone was not complete when we concluded the interview. Jane Doe consented to us taking custody of the cell phone in order to complete the forensic extraction. I accepted custody of Jane Doe's phone on October 3, 2014. The cell phone was returned to Jane Doe on October 4, 2014

28.    After Sergeant Cecil completed the forensic extraction and analyzed the extracted data, he emailed me a timeline spreadsheet he had generated with forensic software. The timeline displayed in chronological order all of the actions the user performed on the mobile phone to include: internet history, call logs, applications opened, texting, etc... After reviewing the timeline spreadsheet, I found multiple text message conversations between Jane Doe, Russell, and/or Angela. These messages were as follows:

June 21, 2014 – Sent to Angela-Russ from Jane Doe: "Hey! Hope you are having fun I'm Vegas! Can't wait to see you again! You guys will have to come over to play when you guys are home."

June 21, 2014 – Sent to Jane Doe from Angela-Russ: "Ya sounds good. Get that horse cock ready for me why russ pounds me from behind and you."

June 21, 2014 – Sent to Angela-Russ from Jane Doe: "Any way you want it."

June 21, 2014 – Sent to Jane Doe from Angela Russ: "Do you want to be my little dirty girl?"

June 21, 2014 – Sent to Angela Russ from Jane Doe: "I will do whatever you want :)"

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "Angie said check this out. (In private lol) http://beastythumbs.com/491924511-horse-blowjob.html.

September 20, 2014 – Sent to Jane Doe from Russ Taylor: http://beastiegals.com/624612568-Corridon-de-caballo.html.

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "Click on link or cut and paste on search bar. :-)"

September 20, 2014 – Sent to Russ Taylor from Jane Doe: "Lol!"

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "She may sneak in your barn later."

September 20, 2014 – Sent to Russ Taylor from Jane Doe: "What are you guys doing tonight?"

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "I'm driving home from my boys game. Not sure yet totally. She had mentioned wanting to play with your horse and partying with you. Not sure."

September 20, 2014 – Sent to Russ Taylor from Jane Doe: "I wish I could go out. I have been throwing up since last night so I know I wouldn't be able to."

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "We would only be doing party favors with you. No drinking :-)."

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "Do you have a dog?"

September 20, 2014 – Sent from Jane Doe to Russ Taylor: "Save them for another night please. My belly just hurts too bad tonight. I don't want to keep throwing up."

September 20, 2014 – Sent to Jane Doe from Russ Taylor: "We will pull the plug on that then. . .we know someone who has a dog though that we may borrow. She wants to know if we have it the night you come over to."

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Any more pics I can masturbate over?"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "Lol. Tell me what you want to see. I got it all."

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Everything."

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "Pics or video?"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Both?"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "I want that"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "You get them"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Yeah! Can I have more?"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "I love them! So hot"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "Yes What. Type? Her with dogs, orgy, s and m, young girls, etc"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Young orgy"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Any of you and her?"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "Yes"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "How young are you ok with"

September 28, 2014 – Sent to Russ Taylor from Jane Doe: "Legal age"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "Ok"

September 28, 2014 – Sent to Jane Doe from Russ Taylor: "I wanted to ask lol. Keep in mind we do travel to Thailand on occasion :-)"

29. During the course of this investigation, I visited the two URLs Russell recommended (www.beastythumbs.com and www.beastiegals.com) and determined both were bestiality-dedicated websites that depicted images of men and women engaged in sexual activity with various animals.

30. On October 17, 2014 I conducted surveillance on the residence located at 1304 Salem Creek Boulevard in Indianapolis, Indiana (**Attachment A**). The residence was a two-story ranch style home with a brown roof, tan siding and red brick, green shutters and a 3 car garage (two garages). The home was located at the intersection of Salem Creek Boulevard and Baritone Court. The residence faced east and has a physical address of 1304 Salem Creek Boulevard, Indianapolis, Marion County, Indiana 46231. Affixed to the brick exterior of the front porch and to the left of the front door were the numbers *1304*. I observed a 2013 gray Hyundai and a 2005 black Chrysler parked at this address. After consulting Indiana Bureau of Motor vehicle records, I determined these vehicles were registered to an Angela M. Taylor.

31. Further investigation with the United States Postal Service indicated Russell Taylor and Angela Taylor receive mail at 1304 Salem Creek Boulevard, Indianapolis, Marion County, Indiana 46231.

32. Your Affiant requested a mobile locator request to AT&T Wireless for the cell phone number 317-250-0661, a cell phone number assigned to the Jared Foundation Inc. Russell Taylor serves as executive director of the Jared Foundation. Your Affiant received mobile locator results from February 2, 2015 to February 9, 2015. Mobile locator results placed the phone in the area of 1304 Salem Creek Boulevard. The mobile locator request was terminated on February 10, 2015.

33. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard

drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

Conclusion

34.      Based on the above information, there is probable cause to believe that Indiana Code 35-46-3-14 prohibits a person from knowingly or intentionally performing an act involving a sex organ of a person and the mouth or anus of an animal; a sex organ of animal and the mouth or anus of a person; any penetration of the human female sex organ by an animal's sex organ; or any penetration of an animal's sex organ by the human male sex organ and Indiana Code 35-42-4-4 which, among other things, make it a state crime for any person to knowingly possess child pornography, have been violated, and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in **Attachment B** of this Affidavit, are located at the SUBJECT PREMISES.

35.      Based upon the foregoing, this Affiant obtained a legal and valid search warrant for the SUBJECT PREMISES, more particularly described in **Attachment A**, authorizing the seizure of the items

described in **Attachment B.**

On April 29th, 2015 this affiant, along with assisting officers served the search warrant. Russ Taylor was located in the residence. After being advised of his Miranda rights and signing a rights waiver, Taylor gave a recorded statement to this affiant. During a forensic search of multiple media devices, detectives observed multiple video files of minor children in a bedroom and bathroom. Many of these videos showed the exposed genitalia of the minor children. The children are believed to be the 16, and for 14 year old stepdaughters of Taylor and the 12 year old step son of Taylor. When these items were discovered, examiners stop the search in order to obtain an additional warrant.

This affiant requests a search warrant be issued to include an examination of all items seized by authority of the previous search warrant as described in attachment B. It is further requested that this search warrant expressly include the authority to search all seized items for evidence of child exploitation/child pornography in violation of I.C code 35-42-4-4.

I swear under the pains and penalties of perjury that the facts contained within this affidavit are true and correct to the best of my knowledge.

Kevin L. Getz
Detective, Indiana State Police

Subscribed and sworn
before me this 29 of ___April___ , 2015

Amie Martens - pro tem

Judge
Marion _____ Court

## ATTACHMENT A

### DESCRIPTION OF LOCATION TO BE SEARCHED

**STREET ADDRESS:**

1304 Salem Creek Boulevard
Indianapolis, Indiana 46231

FILED

(118)   APR 2 9 2015

*Myla A. Eldridge*
CLERK OF THE MARION CIRCUIT COURT

**PROPERTY DESCRIPTION:**

The property to be searched is more particularly described as: a two-story ranch style home with a brown roof, tan siding and red brick, green shutters and a 3 car garage (two garages). The home is located at the intersection of Salem Creek Boulevard and Baritone Court. The residence faces east and has a physical address of 1304 Salem Creek Boulevard, Indianapolis, Marion County, Indiana 46231. Affixed to the brick exterior of the front porch and to the left of the front door were the numbers *1304*.

**PROPERTY PHOTO:**



## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR, SEIZED, AND EXAMINED

a.     Information that reflects a sexual interest in minors or an interest in, or access to, websites containing child pornography and child erotica in any form wherever it may be stored or found, including hard copy or digital notes, files, data or logs. Information that reflects a sexual interest in animals or an interest in, or access to, websites containing bestiality in any form wherever it may be stored or found, including hard copy or digital notes, files, data or logs.

b.     Images of child pornography and child erotica, and files containing images of child pornography and child erotica in any form wherever they may be stored or found. Production images of bestiality with subjects identified as Russell C. Taylor and/or Angela M. Taylor.

c.     Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, cell phones, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), any computer programs capable of viewing any graphic files, and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software

manuals related to or used to visually depict bestiality, child pornography or child erotica; that contain information pertaining to the interest in child pornography; and/or the distribution, receipt, or possession child pornography, or information relating to a sexual interest in minors; and any text files containing information pertaining to an interest in child pornography or sexual activity with minors and/or pertaining to the sale, receipt, or possession of child pornography.

d.  Books and magazines containing visual depictions of child pornography, as defined in Indiana Code 35-42-4-4;

e.  Originals, copies, and negatives of child pornography, as defined in Indiana Code 35-42-4-4; and

f.  Motion pictures, films, videos, and other recordings of child pornography, as defined in Indiana Code 35-42-4-4;

g.  Any and all cameras, film, videotapes or other photographic equipment.

h.  Information or correspondence pertaining to the possession, distribution or attempted distribution of child pornography as defined in Indiana Code 35-42-4-4, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

1.  Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of child pornography, as defined in Indiana Code 35-42-4-4; and

2.  Any and all address books, diaries, ledgers, mailing lists, supplier lists, mailing address labels, and records in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of

any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any child pornography, as defined in Indiana Code 35-42-4-4;

i.  Any credit card billing and payment records for internet service;

j.  Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

k.  Records or other items which evidence ownership or use of any computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes, registry and setup information within the computer's operating system and customized changes made to the operating system's directory structure.

STATE OF INDIANA ) IN THE MARION SUPERIOR COURT
) SS: CRIMINAL DIVISION 11
COUNTY OF MARION )

CAUSE NO: 49G06-1504-MC-014875

IN THE MATTER OF )
A REQUEST FOR THE )
ISSUANCE OF A )
SEARCH WARRANT )

FILED

APR 2 9 2015    (160)

## VERIFIED REQUEST TO PROHIBIT PUBLIC ACCESS TO INFORMATION IN COURT RECORDS

COMES NOW the State of Indiana, by Marion County Deputy Prosecuting Attorney Allison Broviak, pursuant to Indiana Code 5-14-3-1 and Indiana Administrative Rule 9 [Sections G and H], and moves the Court to prohibit public access to the Search Warrant Affidavit, Search Warrant, and Motion to Prohibit Public Access to Information in Court Records in the above-entitled cause. In support of this motion, the State of Indiana brings forth the following information:

1. This Court Order is part of an on-going criminal investigation.

2. The public interest, in particular the public safety interest, will be substantially served by prohibiting public access to the Search Warrant Affidavit, Search Warrant, and Verified Motion to Prohibit Public Access to Information in Court Records.

3. Access to or dissemination of the information contained within the Search Warrant Affidavit and Search Warrant will create a significant risk of substantial harm to and could endanger the safety of Law Enforcement Officers, Confidential Informants and/or Cooperating Individuals during this criminal investigation.

4. Access to or dissemination of the information contained within the Search Warrant Affidavit and Search Warrant will have a substantial prejudicial effect on and

could severely hinder the efforts of Law Enforcement Officers during the course of this investigation.

5. Pursuant to Indiana Code 5-14-3-2(i), Investigatory records have been defined as "information compiled in the course of the investigation of a crime".

6. Pursuant to Indiana Code 5-14-3-4(b)(1), Investigatory records of law enforcement agencies shall be exempted from the public access requirements.

7. Pursuant to Administrative Rule 9, Section 9(G), the following information in case records is excluded from public access and are confidential:

. . . search warrants ordered confidential by the trial judge,

prior to return of duly executed service as declared confidential

by I.C. 5-14-3-4(b)(1);

8. Pursuant to Indiana Code 5-14-2-1, a criminal action, which requires public access, is only commenced upon the initiation of a prosecution.

9. When the documents sought to be protected fall within the mandatory exceptions set forth in Title 5 or Administrative Rule 9, a court can seal those records without holding a public hearing.

10. For the above reasons, the State respectfully requests that the court prohibit public access to the above described documents.

Respectfully submitted,

_____
Allison Broviak, 18130-49A
Deputy Prosecuting Attorney

I swear or affirm under the penalty of perjury, as specified by Indiana Code 35-44-2-1, that the foregoing representations are true.

_____

Kevin L. Getz
Law Enforcement Officer
Applicant

Marion County Prosecuting Attorney
251 East Ohio Street
Indianapolis, Indiana 46204
(317) 327-8510

STATE OF INDIANA      )
                          ) SS:
COUNTY OF MARION     )

IN THE MARION SUPERIOR COURT
CRIMINAL DIVISION 11

CAUSE NO: 49G06-1504-MC-014875

IN THE MATTER OF         )
A REQUEST FOR THE       )
ISSUANCE OF A             )
SEARCH WARRANT        )

FILED

APR 29 2015 (160)

CLERK OF THE MARION...

## ORDER PROHIBITING PUBLIC ACCESS TO INFORMATION IN COURT RECORDS

COMES NOW the State of Indiana, by Deputy Prosecuting Attorney Allison Broviak, and files its Verified Request to Prohibit Public Access to Information in Court Record;

The Court, being duly advised, now **GRANTS** the Verified Request and **EXEMPTS FROM AND PROHIBITS PUBLIC ACCESS TO** the Search Warrant Affidavit, Search Warrant, and Motion to Prohibit Public Access to Information in Court Records with the above-entitled Cause Number until return of duly executed service.

SO ORDERED THIS 29 DAY OF April , 2015.

Signed _Amie Martens_

Printed Name: _Amie Martens_

Circle one:     Judge     Magistrate     Commissioner  (Pro-Tem)

Marion Superior Court
Criminal Division 11